## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TODD MICHAEL TOMASELLA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-CV-476-S-BH** |
| | § | |
| **DIVISION OF CHILD SUPPORT, et al.,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation are *Judge Blair's First Amended Motion to Dismiss*, filed January 12, 2021 (doc. 62), *Defendants' Bryan Beavers and Rhonda Hughey's Motion to Dismiss Plaintiff's Amended Complaint*, filed January 25, 21 (doc. 68), and *Defendant Warren Kenneth Paxton's Motion to Dismiss Plaintiff's First Amended Complaint*, filed January 28, 2021 (doc. 70). Based on the relevant filings and applicable law, the defendants' motions to dismiss should be **GRANTED**.

## I. BACKGROUND

In this civil rights action under 42 U.S.C. § 1983, Todd Michael Tomasella (Plaintiff) sues the Texas Attorney General (AG), a state court judge (Judge), a county district court clerk (Clerk), and a county sheriff (Sheriff) (collectively Defendants), in their individual capacities, alleging violation of his constitutional rights and of the Racketeer Influence and Corrupt Organizations Act (RICO). (doc. 60 at 1-3, 19-29.)[2] He also asserts state law claims for invasion of privacy, false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, tortious interference, and civil conspiracy. (*Id.* at 19-28.)

---

1 By *Special Order No. 3-251*, this *pro se* case was referred for full case management.

2 Citations to the record refer to the CM/ECF system page number at the top of each page.

Plaintiff alleges that in 1995, an El Paso county clerk "sold [him] a marriage license to wed his mate" but failed "to provide adequate notice [ ] that by signing the license," he could be ordered to pay child support for any children born during the marriage. (doc. 60 at 5.) Since separating from his wife in 1999, he has made monthly child support payments to her in the total amount of $65,531.00. (*See* doc. 60 at 15; doc. 77 at 7.) He claims that the "child support division" (CSD) of the AG's office is a for profit business, that he was "compelled [ ] to be a customer of the CSD against his will," and that it "gain[ed] substantial profits from subjecting him to deprivation of his" rights. (*See* doc. 60 at 13; doc. 77 at 9.) These profits are gained by selling CSD's "services" and forcing individuals to be "customers" of the CSD. (*See* doc. 60 at 7, 12-13.) When he was unable to make his monthly child support payments, he was arrested and incarcerated on three separate occasions between April 3, 2013 and June 1, 2015, spending a total of 595 days in jail. (*See* doc. 60 at 15-16.)

Plaintiff contends he was sentenced to more than six months in jail for contempt of court without being represented by counsel or having a jury trial. (*See id.*) He spent 45 days in segregation in "a 5 x 9 cell [ ] for a rash" he contracted while in the county jail, and he spent another 30 days in segregation as punishment for answering a guard's question. (*See id.* at 16.)[3] Plaintiff was led to believe that he needed to sign an order agreeing to pay $1,300.00 per month in child support to be released from jail. (*See* doc. 60 at 16.) He was subsequently released, and when he was once again unable to make payments, he was arrested and incarcerated for seven and a half months. (*See id.*) He filed a petition for writ of habeas corpus in the Fifth District Court of Appeals,

---

3  According to Plaintiff, the jail lacked an adequate policy governing the treatment of chronically ill or recently hospitalized inmates, and had customs or unofficial policies that prevented him from receiving timely medical treatment. (*See* doc. 77 at 24-25.)

arguing he had been wrongfully denied a jury trial when he was sentenced to more than six months for criminal contempt. (*See id.* at 17.) His petition was granted, and the criminal contempt portion of the trial court's order was vacated. (*Id.*)

After Plaintiff filed this lawsuit on February 25, 2020, the defendants moved to dismiss all claims against them for lack of subject-matter jurisdiction and/or failure to state a claim upon which relief may be granted. (*See* docs. 14, 27, 31.) He then sought and obtained leave to file a first amended complaint. (*See* doc. 51; doc. 51-1 at 1, 25-26; doc. 59.) His first amended complaint alleges that Defendants violated his constitutional rights and that their "unlawful actions . . . resulted in [his] suffering over 20 years of psychological trauma including the looming, perpetual fear and embarrassment of being arrested, the loss of companionship of [his] only child, and complete financial ruin[.]" (*See* doc. 60 at 17.) He also alleges that Defendants tortiously interfered with his business and personal relationships, as well as his parent/child relationship, and that Defendants' RICO violations caused injury to his business and property. (*Id.* at 26-27.) As noted, he also asserted state law claims for invasion of privacy, false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, tortious interference, and civil conspiracy. (*Id.* at 19-28.)

Defendants again moved to dismiss all claims against them. (*See* docs. 62, 68, 70.) Plaintiff responds that Attorney General failed to follow a procedure in the pretrial considerations section of a criminal nonsupport handbook, which notes that contempt for failure to pay child support is a quasi-criminal proceeding, and that obligors have the right to an attorney, may not be made to testify against themselves, and are entitled to a jury. (*See* doc. 76 at 5-7.) He also alleges that on two separate occasions, Judge sentenced him to more than sixteen months in jail without a jury

3

trial, and that Clerk and Sheriff assisted and implemented an "illegal order which was later revoked by [the] Appeals Court." (*See* doc. 77 at 7, 21-22; doc. 96 at 4-5.) Defendants replied. (docs. 73, 83-84.)

## II. RULE 12(b)(1)

Defendants move to dismiss Plaintiff's claims against them under Rule 12(b)(1) for lack of subject-matter jurisdiction based on the *Rooker-Feldman* doctrine.[4]  (doc. 62 at 2; doc. 68 at 6-7; doc. 71 at 2).

### A.   <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject-matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12

---

4 "Because the *Rooker–Feldman* doctrine is jurisdictional, we must address this issue first." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381–82 (5th Cir. 2013).

motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

A district court may dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (*en banc*). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction.   *Id*.

If the defendant supports the motion with evidence, however, then the attack is "factual," and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, Defendants rely on Plaintiff's complaint, so they present a facial attack that does not

5

require the Court to resolve matters outside the pleadings. *See Bridgewater v. Double Diamond-Delaware, Inc.*, No. 3:09−CV−1758−B, 2010 WL 1875617, at *5 (N.D. Tex. May 10, 2010); *Lester v. Lester*, No. 3:06−CV−1357−BH, 2009 WL 3573530, at *4 (N.D. Tex. Oct. 29, 2009).

## B.  Rooker-Feldman Doctrine

The *Rooker-Feldman*[5] doctrine divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281 (2005). "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). Under 28 U.S.C. § 1257, only the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state. Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005−06 (1994).

A "state court judgment is attacked for purposes of *Rooker-Feldman* 'when the [federal] claims are inextricably intertwined with a challenged state court judgment.'" *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). *Rooker-Feldman* "does not preclude federal jurisdiction over an 'independent

---

[5] The *Rooker−Feldman* doctrine takes its name from two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

claim,' even 'one that denies a legal conclusion that a state court has reached [,]'" however. *Id*. (quoting *Exxon Mobil Corp*, 544 U.S. at 293); *accord Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 673 (5th Cir. 2015) (per curiam). Additionally, the Fifth Circuit has held that the doctrine does not apply if the state proceedings, even if on appeal, were ongoing at the time the federal suit was filed. *See Gross v. Dannatt*, 736 F. App'x 493, 494 (5th Cir. 2018) (quoting *Ill. Cent. R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012) ("this court has limited the application of *Rooker-Feldman* to those cases in which 'a party suffered an adverse final judgment rendered by a state's court of last resort.'"); *Anthony of the Family Baker*, 2018 WL 4858743, at *5 (citing *Gross*, 736 F. App'x at 494). The doctrine "generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment." *Weaver*, 660 F.3d at 904 (emphasis added). Nonetheless, a party cannot escape *Rooker-Feldman* by "casting . . . a complaint in the form of a civil rights action." *Liedtke*, 18 F.3d at 317 (citing cases).

### 1.    State Law Claims Based on Child Support Order

Here, Plaintiff alleges that despite paying $65,531.00 in child support since his separation from his ex-wife in 1999, Defendants conspired to maliciously prosecute, falsely arrest, and falsely imprison him for failing to pay child support. (doc. 60 at 15.) He claims that Defendants sell CSD's "services" in return "for a share of billions in profits" that are gained from individuals like himself, who are forced to be "customers" of the CSD. (*See id*. at 7, 12-13.) Their prosecution of him "underscores the malice and disdain of [Defendants]" and gave publicity "to matters concerning [his] personal life i.e. [c]hild [s]upport calculations, arrears, wrongful arrests[.]" (*Id*. at 9, 15, 23.) He claims this highly offensive publication was not of legitimate public concern, destroyed his credibility, and invaded his privacy. (*See id*. at 15, 17, 23.) He alleges that Judge issued an illegal

order that the other defendants followed, and that they are all "vicariously liable for their employees, supervisors, officials representatives[,] and all those acting in concert with them." (doc. 97 at 18.) He also alleges that Defendants tortiously interfered with his business and personal relationships as well as his parent/child relationship, that their RICO violations caused damaged his business and property and caused "complete financial ruin," and that he has been traumatized as a result. (doc. 60 at 17, 26-27.)

Plaintiff's claims of invasion of privacy, intentional infliction of emotional distress, tortious interference, civil conspiracy, and malicious prosecution, are in effect a challenge to the validity of the state court's child support order. A finding that Defendants conspired to maliciously prosecute Plaintiff, falsely arrest and imprison him, and that they "tortiously interfere[]" with his parent/child and business relationships, would necessarily require a determination of the validity of the state court's order. *See Bell v. Valdez*, 207 F.3d 657 (5th Cir. 2000) (vacating and remanding the lower court's dismissal under Rule 12(b)(6) for failure to state a claim because the court lacked subject-matter jurisdiction over the plaintiff's conspiracy claim that was essentially an appeal of the state court judge's divorce decree); *see also Manning v. Franklin*, No. CIV.A. H-14-2916, 2015 WL 4039388, at *4 (S.D. Tex. June 16, 2015), *report and recommendation adopted as modified*, No. CIV.A. H-14-2916, 2015 WL 4385989 (S.D. Tex. July 2, 2015) (holding that the plaintiff's claims for false arrest and conspiracy to remove her son from her custody based on a "fraudulent" court order and manufactured circumstances that deprived her of notice, leading to a warrant and her arrest for failure to appear, were inextricably intertwined with her child custody and child support order and therefore barred by the *Rooker-Feldman* doctrine). "Courts in this circuit have 'consistently applied the *Rooker-Feldman* doctrine as a bar to federal jurisdiction over

matters related to the family disputes of divorce and child support.'"*Aikins v. Pitre*, No. 3:18-CV-2341-B-BN, 2018 WL 5634214, at *3 (N.D. Tex. Sept. 21, 2018), *report and recommendation adopted*, No. 3:18-CV-2341-B, 2018 WL 5621490 (N.D. Tex. Oct. 30, 2018) (citing cases).

Plaintiff argues that he is not seeking relief from the state family court judgment; his claims are instead based on the criminal contempt order that was vacated by the state appellate court. (*See* doc. 76 at 15; doc. 77 at 17; doc. 97 at 10.) His malicious prosecution, conspiracy, invasion of privacy, tortious interference, and intentional infliction of emotional distress claims are not based on the criminal contempt order, however. Nor are they based on independent conduct by Defendants. His allegations are rooted in the child custody case. For example, he claims that Defendants gave publicity "to matters concerning [his] personal life i.e. [c]hild [s]upport calculations, arrears, wrongful arrests[.]" (doc. 60 at 9, 15, 23.) He also generally alleges that Defendants' malicious prosecution of him for failure to pay child support despite his continued payments since 1999, and the resulting state court judgment, tortiously interfered with his parent/child relationship. (*See id.* at 15, 26.) All of the factual allegations in Plaintiff's malicious prosecution, conspiracy, invasion of privacy, tortious interference, and intentional infliction of emotional distress claims against Defendants are "inextricably intertwined" with his child support judgment, and seek an impermissible review of the validity of the state court judgment. *See e.g.*, *Nemcik v. Fannin*, No. 18-CV-05120-JST, 2019 WL 720993, at *2 (N.D. Cal. Feb. 20, 2019), *aff'd*, 797 F. App'x 319 (9th Cir. 2020) (finding that the plaintiff's allegations that the defendants' actions tainted the fairness of her child custody proceedings and the adverse outcome of those proceedings caused her to "suffer[ ] irreparable harm, loss of job, loss of custody and companionship with her children," were "inextricably intertwined" with the state court

9

proceedings and therefore the court lacked subject-matter jurisdiction to adjudicate them); *see also Zimmerman v. Arp*, No. CIV.A. 08-CV-00246-Z, 2008 WL 793580, at *2 (D. Colo. Mar. 20, 2008) (finding that the plaintiff's civil conspiracy claim against a state court judge was "inextricably intertwined" with the state court judgment, and therefore sought an impermissible review, because he alleged that the orders were issued "despite the 'invalidity and unenforceability [sic] of the debt'" they based on); *Hall v. Martin*, 191 F.R.D. 617, 623 (D. Kan. 2000) ("Plaintiff's federal claim for malicious prosecution may succeed only to the extent that the state court wrongly decided the issue before it."). Plaintiff's alleged injuries flow from the state court child support judgment and would require a finding that the judgment was improper. *See Truong*, 717 F.3d at 382 (explaining that the two hallmarks of the *Rooker-Feldman* inquiry is what the court is being ask to review and reject, and the source of the plaintiff's alleged injury); *see also Sims v. McDilda*, No. SA-20-CV-00722-XR, 2021 WL 84355, at *7 (W.D. Tex. Jan. 11, 2021) (finding that the plaintiff's claim was barred by *Rooker-Feldman* because the alleged wrongful conduct was only alleged to be wrongful because the judgment was taken in violation of her rights).

Plaintiff alleges that he was falsely arrested and imprisoned on three occasions for failing to pay for child support. (*See* doc. 60 at 15, 21; doc. 97 at 4-5.) The order vacating Plaintiff's sentence for criminal contempt specifically noted that it did "not disturb the trial court's findings or sentence related to civil contempt." (doc. 60 at 17.) To the extent that Plaintiff's false arrest and false imprisonment claims are based on the two arrests related to the civil contempt proceedings, he seeks an impermissible review of the validity of the state court judgment. *Compare Nellom v. Delaware Cty. Domestic Rels. Section*, 145 F. Supp. 3d 470, 484 (E.D. Pa. 2015) (explaining that the plaintiff could not be afforded relief by the court without reviewing the basis for the state court

determination and then invalidating the state court order itself), and *Taylor v. Montgomery Cty., Ohio Child Support Enf't Agency*, No. 3:18-CV-272, 2019 WL 2026748, at *3 (S.D. Ohio May 8, 2019), *report and recommendation adopted*, No. 3:18-CV-272, 2019 WL 3891890 (S.D. Ohio Aug. 16, 2019) ("Insofar as [the plaintiff] seeks to rescind, void, vacate, or cancel the state child support order or the subsequent contempt finding for which he was arrested and jailed, [. . . ] such claims are barred by application of the *Rooker-Feldman* doctrine."), *with Session v. Rodriguez*, 370 F. App'x 189, 191 (2d Cir. 2010) (vacating dismissal of the plaintiff's false arrest and false imprisonment claim because he was not a "state-court loser" since the charges against him were dismissed, and he therefore did not "invite district court review and rejection" of the state court order).

In summary, because Plaintiff's claims for invasion of privacy, intentional infliction of emotional distress, tortious interference, civil conspiracy, and malicious prosecution are "inextricably intertwined" with the state court's judgment against him, they are barred by *Rooker-Feldman*. *See United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) (explaining that a plaintiff's claims are "inextricably intertwined" with a state judgment if the district court is confronted with issues that in essence call upon it to review the state court decision). To the extent his false arrest and false imprisonment claims are based on his arrests relating to the civil contempt proceedings that were not vacated by the state appellate court, they are also barred by *Rooker-Feldman*.

### 2.   *RICO Claim*

As for his allegations that Defendants violated RICO, Defendants' actions are based upon occurrences during the state court proceedings and the "illegal order." (*See* doc. 60 at 27; doc. 97

at 18; doc. 102 at 17-18.) The sole cause of his alleged injury is the adverse child support judgment and its alleged effect on his business. *See Turner v. Cade*, 354 F. App'x. 108, 111 (5th Cir. 2009). Plaintiff alleges that Defendants engaged in a conspiracy in violation of RICO, to issue and follow an "illegal order" that caused a loss of profits and reduction in value or worth to his business. (doc. 60 at 27; doc. 97 at 18; doc.102 at 17-18.) He claims that as result of Defendants' "acts of racketeering, or the pattern of racketeering activity, or the conduct of the affairs of [ ] Defendants through the pattern of racketeering activity" his business suffered a loss of money or profits and a reduction in value/worth. (*See* doc. 60 at 27.) He fails to allege a "pattern of racketeering activity" or "some sort of hierarchal or consensual decision-making structure" that exists for "purposes other than just to commit predicate acts," however. *In re McCann*, 268 F.App'x. 359, 366 (5th Cir. 2008).

To the extent his allegations that the CSD's alleged "for profit business" can be construed as a pattern of racketeering activity, his RICO claim is "inextricably intertwined" with his state court child support judgment. For example, he appears to allege that Defendants sell CSD's "services" in return "for a share of billions in profits" that are gained from individuals who are forced to be "customers" of the CSD. (doc. 60 at 7, 12-13.) His claims of racketeering activity to force individuals to pay child support for a share of the profit in effect challenge the validity of the state court's child support order. A finding that Defendants forced individuals to be customers of the CSD in violation of RICO would necessarily require determination of whether the state court's child support order is valid. *See Larrew v. Barnes*, No. 3-02-CV-1585-K, 2003 WL 21458754, at *2 (N.D. Tex. May 7, 2003), *aff'd*, 87 F. App'x 407 (5th Cir. 2004) (finding that the plaintiff's RICO claim was "inextricably intertwined" with his state divorce proceeding and related child

12

support order because the court must reverse the state court's findings and void the divorce decree in order for him to prevail on his RICO claim). Because Plaintiff's RICO claim seeks impermissible review and rejection of the state court's order, it is barred by *Rooker-Feldman*. *See Green v. Mallia*, No. CIVA H-09-4159, 2010 WL 816786, at *4 (S.D. Tex. Mar. 4, 2010), *adhered to on reconsideration*, No. H-09-4159, 2010 WL 1337736 (S.D. Tex. Mar. 29, 2010), and *aff'd*, 400 F. App'x 816 (5th Cir. 2010) (finding that the plaintiff's RICO claim alleging that the defendants engaged in obstruction of justice by filing an "invalid Rule 11 Agreement" in the state court lawsuit, was barred by *Rooker-Feldman* and was not supported by factual allegations).

### 3.   *First Amendment Claim*

Although Plaintiff's complaint does not expressly cite the First Amendment, his allegations of "compelled association" and being forced to "espouse ideals or beliefs with which he disagrees" may be liberally construed as asserting a violation. (*See* doc. 60. at 13.) He contends that the alleged operation of CSD as a for profit business "prove[s] that [he was] compelled to be a customer of the CSD against his will from which wrongdoers gain substantial profits[.]" (*Id.*) Plaintiff's compelled association with the CSD's alleged operation as a for profit business stems from the state court order requiring him to pay child support, and from Defendants' efforts to enforce the state court order. *See Troy of Fam. Carslake v. Dep't of Child Support Servs.*, No. 18-CV-06176-YGR, 2019 WL 2142036, at *3 (N.D. Cal. May 16, 2019) (the plaintiff's cause of action for forced and compelled association on grounds that the child support organization was in fact a private business for profit which offered and sold its services to "customers" was barred by *Rooker-Feldman*). For this reason, he fails to allege a First Amendment claim that is independent of the state court judgment. *See Weaver*, 660 F.3d at 904 (noting that *Rooker-Feldman* does not

preclude federal jurisdiction over an "independent claim," even "one that denies a legal conclusion that a state court has reached.")

Plaintiff's conclusory allegation that he is required to "espouse ideals or beliefs with which he disagrees," is also based on the state court child support order. He makes general and conclusory allegations that he was forced to espouse ideals or beliefs with which he disagrees, but he fails to allege how paying child support as ordered required that he support or espouse any ideals or beliefs with which he disagrees. *See Bowerman v. Lyon*, No. 17-CV-13903, 2018 WL 3639848, at *4 (E.D. Mich. June 20, 2018), *report and recommendation adopted*, No. 17-13903, 2018 WL 3631581 (E.D. Mich. July 31, 2018) (recommending dismissal of the plaintiff's First Amendment claim for lack of subject-matter jurisdiction where the plaintiff alleged that by requiring him to pay child support he was being forced "to *support* or espouse ideals and beliefs with which he disagreed[.]"). He also fails to allege facts separate and apart from the child support order to support his claim. For Plaintiff to succeed on his claim would necessarily require an impermissible review and rejection of the state court's child support order. Accordingly, to the extent his allegations can be construed as raising a First Amendment claim, it is barred by *Rooker-Feldman*.

### 4.    *Claims based on Incarceration*

Plaintiff also sues Defendants under § 1983 for violations of his Fourth, Sixth, Eighth, and Fourteenth Amendment rights and for false arrest and false imprisonment. (*See* doc. 60 at 19-20, 23.) He alleges that he was falsely arrested and imprisoned on three separate occasions and was jailed for six months without a jury trial in violation of his constitutional rights. (doc. 60 at 15-16; doc. 77 at 4; doc. 97 at 4-5.) He filed a petition for writ of habeas corpus, which was granted. (*See id.* at 17.) The court found that he "was wrongfully denied the right to a jury trial[,]" and vacated

14

the criminal contempt portion of the lower court's order. (*Id*.)

To the extent that his state law claims for false arrest and false imprisonment are based solely on the vacated criminal contempt order, they are based on injury separate and apart from the child support determination.[6] While the state court may conclude that a criminal contempt charge will be asserted, it must ensure that all the safeguards of criminal procedure and the law are present. *See Clark v. Boynton*, 362 F.2d 992, 999 (5th Cir. 1966) (a jury trial is required where the sentence to be imposed exceeds six months imprisonment, i.e., exceeding the penalty for petty offenses); *see also Briggs v. Arthur*, No. CIV.A.1:01 CV 397, 2003 WL 23539588, at *3 (E.D. Tex. Sept. 16, 2003), *report and recommendation adopted*, No. CIV.A.1:01 CV 397, 2003 WL 23539589 (E.D. Tex. Oct. 28, 2003) ("In Texas, the maximum punishment applicable to criminal contempt is imprisonment of 6 months, a fine of $500, or both.") (citing Tex. Gov't Code Ann. § 21.002). Plaintiff seeks damages for alleged injury based on the vacated criminal contempt portion of a state court order that resulted in his imprisonment for more than six months without a jury trial. These claims can be reviewed without calling the validity of the state court's determination that Plaintiff was obligated to pay for child support into question. *See Session*, 370 F. App'x at 191 (plaintiff was not a "state-court loser" since the charges against him were dismissed, so his false arrest and false imprisonment claims did not "invite district court review and rejection" of the state court order).

Similarly, Plaintiff's § 1983 claims for violation of his Fourth, Sixth, Eighth, and

---

6 Plaintiff does not specify the date of his arrest that corresponds with the vacated criminal contempt order. He merely lists the dates of his incarceration and the dates of his release. (*See* doc. 60 at 15.) Nor does the excerpt from the state appellate court order vacating the criminal contempt portion of his sentence in his complaint indicate the date of the sentence being vacated. (*See id*. at 17.)

Fourteenth Amendment rights are based on his arrest and imprisonment for more than six months without a jury trial, the denial of the right to counsel, and the poor jail conditions to which he was subjected to during his imprisonment. These claims are not inextricably intertwined with his child support judgment. *See Avdeef*, 616 F. App'x at 673 (finding that the plaintiff's claims were not barred by *Rooker-Feldman* because he "seeks relief *other than* review and reversal of the adverse state-court judgment: he requests damages for alleged constitutional violations and torts committed by the parties to the state-court action"); *see also Saloom v. Texas Dep't of Family & Child Protective Servs.*, 578 F. App'x 426, 429 (5th Cir. 2014) (finding that the plaintiff's claims seeking "damages for injuries caused by the defendants' actions rather than by the state court judgment, which is demonstrated by her emphasis on the defendants' actions rather than the state court judgment," were not barred by *Rooker-Feldman*).

Because he alleges injury from alleged constitutional violations, as well as false arrest and imprisonment, in Defendants' enforcement of the child support judgment, Plaintiff does not seek to review and invalidate a state court judgment. His claims for violations of his Fourth, Sixth, Eighth, and Fourteenth Amendment rights, as well as his false arrest and false imprisonment claims based on the vacated criminal contempt order are not barred by *Rooker-Feldman. See Blessett v. Texas Off. of Att'y Gen. Galveston Cty. Child Support Enf't Div.*, 756 F. App'x 445, 446 (5th Cir. 2019) (finding that the plaintiff's claims that the defendants engaged in fraud and violated his constitutional rights in their efforts to enforce and collect the state child support judgments were not barred by *Rooker-Feldman* because they did not require the district court to review and reject a final order of a state court).

## III. RULE 12(b)(6)

Defendants also move to dismiss Plaintiff's § 1983 claims under Rule 12(b)(6) for failure to state a claim. (*See* doc. 62 at 2; doc. 68 at 2; doc. 71 at 6.)

### A.   Legal Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.   *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility

17

of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).   When plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at

570; *accord Iqbal*, 556 U.S. at 678.

**B.**   **42. U.S.C. § 1983**

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of

a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United

States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of

federal statutes, as well as of constitutional norms." *Id.* To state a claim, a plaintiff must allege

facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the

United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v.*

*Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir.

2005).

### 1.   *Judge*

Judge moves to dismiss Plaintiff's claims against him in his individual capacity as barred

by judicial immunity. (doc. 63 at 6, 8.)

The Supreme Court has recognized absolute immunity for judges acting in the performance

of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune

from suit for damages resulting from any judicial act. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).

Allegations of bad faith or malice do not overcome judicial immunity. *Id.* at 11. A plaintiff can

overcome the bar of judicial immunity only under two very limited circumstances. *See Mireles*,

502 U.S. at 11–12; *see also Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). First, a judge is not

immune from suit for actions that are not "judicial" in nature. *See Mireles*, 502 U.S. at 11, 112. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 222 (5th Cir. 2009) (quoting *Mireles*, 502 U.S. at 12). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, [a court should] look to the particular act's relation to a general function normally performed by a judge...." *Id.*

> [The Fifth Circuit] has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. These factors are broadly construed in favor of immunity.

*Davis*, 565 F.3d at 222–23 (citations omitted). "The absence of one or more factors will not prevent a determination that judicial immunity applies." *Carter v. Carter*, No. 3:13-CV-2939-D (BF), 2014 WL 803638, at *1 (N.D. Tex. Feb. 20, 2014) (citing *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005)). Second, a judge is not immune from suit for actions that although judicial in nature, are taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 12. 286; *see also Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

Here, Plaintiff alleges that Judge issued an illegal order that led to his incarceration for more than six months without a jury trial. (*See* doc. 60 at 18; doc. 97 at 5.) He also alleges that Judge failed to maintain a proper policy for "dealing with child support issues, arrears, detainees, prisoners[,] and such other consequential factors which resulted" in his injury. (doc. 60 at 18.)

Plaintiff's allegations against Judge arise from acts in his capacity as a judge that are

19

"normal judicial functions," and which occurred in court during Plaintiff's pending cases. *See Davis*, 565 F.3d at 222–23. He makes no specific allegation that Judge acted outside the scope of his judicial duties or without jurisdiction. Plaintiff's § 1983 claims against Judge in his individual capacity are therefore barred by judicial immunity.

### 2.   *Attorney General*

Attorney General moves to dismiss Plaintiff's claims against him in his individual capacity as barred by qualified immunity. (doc. 71 at 3.)

To prevail against a state official under § 1983, a plaintiff must allege how that defendant was personally involved in or had direct responsibility for the alleged constitutional injury. *See Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). This is because individual defendants can only be held responsible solely for "their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A plaintiff cannot make generalized allegations. *Howard v. Fortenberry*, 723 F.2d 1206 (5th Cir. 1984).

Here, Plaintiff generally alleges that Attorney General failed to establish and maintain a proper policy for child support issues. (doc. 60 at 18.) He also alleges that Attorney General failed to follow a procedure mentioned in the pretrial considerations section of a criminal nonsupport handbook by not providing him an attorney or a jury trial. (*See* doc. 76 at 5-7.) Plaintiff fails to allege facts supporting his claim that the Attorney General's conduct violated his constitutional rights, however. Although he contends that he is suing Attorney General in his individual capacity, he does not allege that the Attorney General was personally involved in a constitutional violation. *See Hamilton v. Foti*, 372 F. App'x 480, 486 (5th Cir. 2010) (affirming dismissal of the plaintiff's claims against the state attorney general in his individual capacity because he failed to allege that

20

the attorney general was personally involved in the alleged civil rights violations). His claims against Attorney General arise out of his alleged oversight of the child support division in Texas. (*See* doc. 76 at 4.) Attorney General may not be held liable in his individual capacity under a theory of *respondeat superior*.[7]  *See Yu v. Perry*, 82 F. App'x 993, 994 (5th Cir. 2003) (a supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability.) Plaintiff has not alleged a viable claim under § 1983 against Attorney General, and his individual capacity claims against him should be dismissed for failure to state a claim. *See Thomas v. State*, 294 F. Supp. 3d 576, 605-11 (N.D. Tex. 2018) (dismissing federal claims asserted under § 1983 for failure to state a claim). Accordingly, Attorney General's motion to dismiss Plaintiff's § 1983 claims against him should be granted.[8]

### 3.    *Clerk*

Here, Plaintiff makes conclusory allegations that Defendants violated his constitutional rights, as well as RICO, and committed several state torts. (*See* doc. 60.) He fails to allege any facts related to Clerk, or how any alleged actions rise to the level of a constitutional violation for which relief is available in this civil action, however.[9] His general and conclusory allegations that Defendants violated his rights are insufficient to state a claim against Clerk in her individual

---

7 *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Respondeat Superior*, *Black's Law Dictionary* (10th ed. 2014).

8 Because Plaintiff's §1983 claims against the Attorney General are subject to dismissal on the basis of qualified immunity, it is unnecessary to reach his remaining arguments for dismissal.

9 Plaintiff's only allegations related to a county clerk appear to be directed at the El Paso county clerk who failed to provide Plaintiff with "adequate notice" that by signing the marriage license he would be subject to child support obligations if he had children. (*See* doc. 60 at 5-6.) He alleges that failure to provide him notice, violated his right to due process. (*See id.* at 6.)

capacity. Because he fails to allege any facts related to Clerk to state a plausible claim for relief under § 1983, his claims should be dismissed. *See Twombly*, 550 U.S. at 570.

Moreover, court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981). They "enjoy [ ] only qualified immunity[, however,] for those routine duties not explicitly commanded by a court decree or by the judge's instructions." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). As discussed above, Plaintiff has not alleged any facts that Clerk was personally involved in a constitutional violation. Because he fails to allege any facts to state a plausible claim against Clerk and because she has immunity based on any actions she took during her role as the county clerk, he fails to state a claim. Therefore, Plaintiff's claims against Clerk in her individual capacity are also subject to dismissal.[10] *See Lewis*, 2011 WL 7070991, at *3.

### 4.    *Sheriff*

Sheriff argues that the claims against him in his individual capacity should be dismissed because Plaintiff fails to allege what he "did individually, or how [he] was personally involved in depriving Plaintiff of his Constitutional rights." (doc. 68 at 2.)

As noted, supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or *respondeat superior* liability. *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005). In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct

---

10  Because Plaintiff's §1983 claims against Clerk are subject to dismissal for failure to state a claim, it is unnecessary to reach her remaining arguments for dismissal.

directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). The acts of a subordinate "trigger no individual § 1983 liability." *Champagne*, 188 F.3d at 314. There must be some showing of personal involvement by a particular individual defendant to prevail against that individual. *Id.* A plaintiff cannot make generalized allegations. *Howard*, 723 F.2d at 1206.

Here, Plaintiff generally asserts his claims against each of the defendants. (*See* doc. 60 at 15-16, 18, 21, 23.) He has not alleged any facts that Sheriff was personally involved in his alleged false arrest or false imprisonment. It appears that he asserts claims against Sheriff based on his allegations that due to the poor jail conditions, he developed a rash, was placed in segregation as punishment for his rash, and again placed in segregation for giving a "simple answer" to a guard's question. (*Id.* at 16.) Because Plaintiff fails to allege personal involvement by Sheriff, he fails to state a claim. *See Johnson v. Valdez*, No. 3:13-CV-2173-B, 2013 WL 5489957, at *2 (dismissing claims against a sheriff for failure to allege any personal involvement); *Carson v. Dallas Cty. Jail*, No. 3:13-CV-0678-K, 2013 WL 3324222, at *2–3 (N.D. Tex. June 28, 2013) (dismissing claims against a sheriff and other supervisory officials for failure to allege any personal involvement).

Moreover, Sheriff did not take office until January 1, 2017. (*See* doc. 68-1). The acts and omissions Plaintiff complains of in his § 1983 suit occurred while he was incarcerated between April 3, 2013 and June 1, 2015. (*See* doc. 60 at 15.) Since Sheriff was not the county sheriff during the time of Plaintiff's incarceration, he could not have individually acted to cause Plaintiff's injuries. *See Darby v. Dallas Cty. Sheriff*, No. 3:06CV1928-K(BH), 2007 WL 2241751, at *10 (N.D. Tex. Aug. 3, 2007) (finding that the county sheriff did not take office until after the acts that

the plaintiff complained of and recommended dismissal of the plaintiff's claims against the sheriff in her individual capacity).

In summary, because Plaintiff fails to allege facts that Sheriff was personally involved in violation of his constitutional rights, he fails to state a viable § 1983 claim against him in his individual capacity. Accordingly, Plaintiff's §1983 claims against him should be dismissed for failure to state a claim.[11]

## IV. RECOMMENDATION

Defendants' motions to dismiss should be **GRANTED**. Plaintiff's federal and state law claims for invasion of privacy, intentional infliction of emotional distress, tortious interference, civil conspiracy, malicious prosecution, and violation of RICO, against Defendants should be **DISMISSED without prejudice** for lack subject-matter jurisdiction, and to the extent Plaintiff's allegations may be construed as asserting a claim under § 1983 for violation of his First Amendment rights, it should also be **DISMISSED without prejudice** for lack of subject-matter jurisdiction. Plaintiff's constitutional claims for violation of his Fourth, Sixth, Eighth, and Fourteenth Amendment rights under §1983, as well as his claims for false arrest, and false imprisonment, should be **DISMISSED with prejudice** for failure to state a claim.[12]

---

11  Because Plaintiff's §1983 claims against Sheriff are subject to dismissal for failure to state a claim, it is unnecessary to reach her remaining arguments for dismissal.

12  By order dated August 20, 2021, Plaintiff's *Motion[s] to Enter Evidence,* (docs. 104, 105), were liberally construed as motions to supplement his pleadings under Rule 15(d) and denied. Even if his proposed supplemental filings were considered, however, the findings and recommendation regarding Defendants' motions to dismiss would remain the same because the filings do not allege any new arguments or facts.   They only repeat the allegations contained in his amended complaint.   (*See* docs. 60, 104-106.)

**SO RECOMMENDED** on this 20th day of August, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE